**Anton NOTEY et al.,
Plaintiffs-Petitioners,**

v.

**Charles J. HYNES, Individually and as Deputy Attorney General of the State of New York and Director of the Office of the Special State Prosecutor for Health and Social Services, Defendant-Respondent.**

No. 76C981.

United States District Court,
E. D. New York.

Aug. 27, 1976.

LaRossa, Shargel & Fischetti, New York City, for plaintiffs-petitioners.

Charles J. Hynes, Deputy Atty. Gen., Hauppauge, N. Y., for defendant-respondent.

## OPINION AND ORDER

PLATT, District Judge.

### PRELIMINARY STATEMENT

This is an action for an injunction and a declaratory judgment restraining the enforcement of Section 190.40 of the New York Criminal Procedure Law and declaring said statute unconstitutional as violative of the Fifth and Fourteenth Amendments to the Constitution of the United States. Plaintiffs have moved for a preliminary injunction to restrain the defendants from enforcing a grand jury subpoena *duces tecum* addressed to Thomas Notey, one of the partners of the Central Island Nursing Home and the South Shore Nursing Home in which the above-named plaintiffs do business as partners, and in connection therewith request the convention of a three-judge court to hear and determine such motion.

Section 190.40 of the New York Criminal Procedure Law provides in pertinent part that:

"1. Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him.

"2. A witness who gives evidence in a grand jury proceeding receives immunity unless:

\* \* \* \* \* \*

(c) The evidence given by the witness consists only of books, papers, records or other physical evidence of an enterprise, as defined in subdivision one of section 175.00 of the penal law, the production of which is required by a subpoena duces tecum, and the witness does not possess a privilege against self-incrimination with respect to the production of such evidence. \* \* \*"

It is not disputed that the nursing homes are "enterprises" as defined in New York Penal Law § 175.00.

The parties agree that the background facts are properly summarized in paragraphs 5 through 14 of the affidavit of the

attorney for the plaintiffs submitted in support of their motion and accordingly such paragraphs are set forth in full herein:

"5. Prior to the issuance of the subject Grand Jury subpoenas, two subpoenas were issued by the defendant pursuant to Section 63(8) of the New York Executive Law. These subpoenas were returnable before the defendant at his offices at the State Office Building Veteran's Highway, Hauppauge, New York, on January 12th, 1976. (Subpoenas attached hereto as petitioners' Exhibits "B" and "C").

"6. The return of the non-judicial subpoenas issued pursuant to Section 63(8) was adjourned by consent of a Special Deputy Attorney General Arthur Friedman, an authorized agent of the defendant, pending the outcome of a motion to quash and vacate these subpoenas, prosecuted before the Hon. F. X. McInerny, Justice of the Supreme Court of the State of New York for the Tenth Judicial District.

"7. On March 3rd, 1976, the above-mentioned motion to quash was granted in part and denied in part, to wit; '. . granted as to the production of all records involving doctor-patient and attorney-client relationships. In all other respects, the motions to quash these subpoenas are denied.'

"8. On April 6th, 1976, the plaintiffs-petitioners brought an action pursuant to Title 42, Section 1983, United States Code, seeking to enjoin the defendant from enforcing these subpoenas and thereby depriving them, under color of state law, of their rights, privileges and immunities secured to them by the Constitution and laws of the United States.

"9. On April 8th, 1976, a *bi partite* hearing was held before the Hon. Henry J. Bramwell, United States District Judge for the Eastern District of New York, to determine whether a temporary restraining order, sought by the petitioners, should issue. Subsequent to that hearing, a temporary restraining order was imposed restraining the defendant from enforcing the two subpoenas duces tecum until April 15th, 1976 pending a hearing for a preliminary injunction to be held before the Hon. Thomas C. Platt, United States District Judge for the Eastern District of New York.

"10. On April 15th, 1976, the plaintiffs-petitioners moved before the Hon. Thomas C. Platt to preclude the defendant from enforcing the subject subpoenas duces tecum, issued pursuant to Section 63(8) of the New York Executive Law. The gravamen of petitioners' action, docketed as No. 76 Civ. 634, was that these subpoenas sought the production of books and records which were protected by the Fifth and Fourteenth Amendments of the United States Constitution. Subsequent to oral argument, in which all parties participated, decision was reserved and the temporary restraining order, formerly imposed by the Hon. Henry J. Bramwell, was ordered to be continued. Pending the decision on the preliminary injunction, counsel for the plaintiffs-petitioners was served, on May 11th, 1976, with a letter by special Deputy Attorney General Arthur Friedman, authorized agent of the defendant. (Letter attached hereto as petitioners' Exhibit "D"). Therein, the petitioners were informed that the office of the Special Prosecutor was:

'Hereby withdrawing, and abandoning all efforts at enforcement of, the previously issued subpoenas duces tecum served upon the Central Island and South Shore Nursing Homes; and

b. Issuing in their stead, two grand jury subpoenas duces tecum which I am enclosing, again pursuant to my understanding with Ron Fischetti.' (Attached hereto as Exhibits "F", "G")

"11. Accordingly, on May 17th, 1976, the matter was brought on before the Hon. Thomas C. Platt. At this time, Special Deputy Attorney General Arthur Friedman notified the Court that he had withdrawn the subpoenas duces tecum which were the subject of the litigation at bar. Mr. Friedman further represented to both Court and counsel that he would never again issue a subpoena pur-

suant to Section 63(8) of the Executive Law to any of the parties involved in this litigation.

"12. Deputy Attorney General Friedman was informed at this time that it was the intention of the plaintiffs-petitioners to seek a judicial determination of the validity of the subsequently issued Grand Jury subpoenas duces tecum. At this time, Mr. Friedman stipulated that he would refrain from enforcing compliance with said subpoenas until such time as a decision had been rendered by this Court determining their validity.

"13. In light of the defendant's withdrawal of the previously issued non-judicial subpoenas, plaintiffs-petitioners' complaint, docketed as No. 76 Civ. 634, was dismissed for the reason that there no longer existed a justiciable case or controversy.

"14. The plaintiffs-petitioners assert upon information and belief, that it is the defendant's position that the procedural characteristics of the instant Grand Jury subpoenas will preclude these petitioners from alleging a deprivation of a federally afforded constitutional right before this Court. The Special Prosecutor is proceeding pursuant to Section 190.40 of the New York Criminal Procedure Law in the hope that he may accomplish an 'end run' around petitioners previously asserted constitutional claims by depriving them of an opportunity to litigate these issues before such time as they are required to comply."

In addition to the foregoing, plaintiffs' new complaint alleges that the grand jury subpoenas in question commanded the plaintiff, Thomas Notey, as operator and owner of the two nursing homes to produce various books and records listed on the subpoenas duces tecum; that the grand jury subpoenas duces tecum were issued without the advice or consent of the grand jury; that the subject books and records of the two partnerships are maintained as the private records of the individual partners and constitute the personal property of the plaintiffs; that the subject partnerships have been operated as personal and purely private businesses; that the records are held by the plaintiffs as their individual personal records and not in any representative capacity; that the compulsory production of such records would operate to deprive plaintiffs of the rights, privileges and immunity secured to them by the Fifth and Fourteenth Amendments of the United States Constitution; that the aforesaid nursing homes are operated as a three-man family partnership; that failure to comply with these subpoenas will subject the plaintiffs to prosecution for criminal contempt; that the enforcement of the subpoenas will result in the deprivation under color of State law of plaintiffs' rights, privileges and immunity secured by the Constitution and will be in violation of Title 42 U.S.C. § 1983; and that enforcement thereof and compliance therewith will cause irreparable and immediate harm, injury and damage to the plaintiffs.

## DISCUSSION

It appears to the Court that there are three principles which preclude granting plaintiffs the relief they request. Collateral estoppel prevents plaintiffs from litigating here a critical part of their claim; the abstention doctrine prevents this Court from acting on their claim; and plaintiffs have not satisfied the requirement, especially severe where we are asked to interfere with the State's criminal process, that irreparable injury be imminent before an injunction is issued.

### I

Defendant points out that originally his office issued two administrative subpoenas *duces tecum* to the Central Island and South Shore Nursing Homes, under the authority of § 63(8) of the Executive Law of the State of New York, that called for the production of the identical documents requested by the grand jury subpoenas *duces tecum*. Following the service of these original subpoenas, plaintiffs' nursing homes moved in the Supreme Court of the State of New York, Suffolk County, to quash the same, complaining that disclosure of the

subpoenaed records violated their Fifth Amendment privileges. In a decision dated March 3, 1976, Mr. Justice George F. X. McInerney denied petitioners' motion and specifically overruled their claim of privilege in the records of the nursing homes, stating in pertinent part as follows:

"Petitioners move to quash the non-judicial subpoenas duces tecum issued by the deputy attorney general, and in the alternative for a modification of these subpoenas.

"Petitioners assert that these subpoenas are fatally overbroad in their scope, that they fail to demonstrate a requisite showing of relevancy and a proper foundation to justify inquisitional action, that all documents enumerated on Exhibits B and D are privileged, and therefore outside the scope of compulsory process, that many of these documents involve patient-physician privilege and that others are immune from disclosure due to the existence of attorney-client privilege, and that the respondent, Charles J. Hynes, had no statutory authority from section 63(8) of the Executive Law to sustain the issue of the instant non-judicial subpoenas.

"Petitioners contend that the books and records of St. James Nursing Home and the St. James Plaza Health Related Facility have not been shown to be necessary to the investigation.

"Section 63(8) of the Executive Law of the State of New York allows the attorney general, in his discretion and with the approval of the governor, to launch an investigation to 'inquire into matters concerning the public peace, public safety, and public justice.'.

"The deputy attorney general contends that by the investigatory work already done, there is ample 'basis for inquisitional action'.

"The deputy attorney general, in his affirmation, states that all of the records subpoenaed relate to 'management, control, operation and funding of nursing homes, care centers, health facilities and related entities'.

"Apparently each operator has signed a provider agreement with the New York State Department of Social Services wherein he contracts to maintain records (such as the ones being subpoenaed) and make them available for inspection as a prerequisite for the receipt of Medicaid funds. Accordingly the Deputy Attorney General contends that these records have a public character.

"The deputy attorney general contends that none of the documents on the schedule are the result of the physician-patient privilege.

"The deputy attorney general has clearly shown the relevancy and materiality of the records that have been subpoenaed and has clearly and specifically identified said records by his schedules. This is a proper case for the issuance of a subpoena duces tecum. There is nothing stated in this paragraph that is inconsistent with the holdings in *Myerson v. Lentini Brothers Moving & Storage Co., Inc.,* 33 N.Y.2d 250, 351 N.Y.S.2d 687 [306 N.E.2d 804].

"The Court of Appeals in *Matter of Sigerty [Sigety] v. Hynes,* [38] N.Y.2d [260] [379 N.Y.S.2d 724, 342 N.E.2d 518], dated December 22, 1975, has held that the owner of a nursing home does not possess a fifth amendment privilege in the home's books and records.

"Apparently a nursing home falls within the definition of a 'hospital' under Section 2801 of the Public Health Law.

"*Matter of Sigerty [Sigety] v. Hynes,* is authority for the deputy attorney general having authority in a proper case to issue subpoenas duces tecum under section 63, subd. 8 of the Executive Law. It would appear that Judge Cooke writing for the court intended that section 63 be interpreted in a broad sense.

"Quoting from *Sigerty [Sigety]* as to the issue of the Fifth Amendment:

'In *Slutsky* [*United States v. Slutsky,* D.C., 352 F.Supp. 1105] the test of *United States v. White* (322 U.S. 694, 701 [64 S.Ct. 1248, 88 L.Ed. 1542]) was applied to determine whether the records of a two-

brother partnership which operated a large resort, known as the Nevele Country Club, were to receive the protection of the Fifth Amendment. Simply, the test is "whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only." Under the factual circumstances, the *Slutsky* court determined that "(i)f the Nevele were owned by a sole proprietor, there can be no question that the records would be immune from production under the Fifth Amendment. The reason for such protection does not change because there is a shared proprietorship * * * (p. 1107).

'A nursing home is not by its nature a family business which the owners can run in any manner they choose. It falls within the definition of a "hospital" under section 2801 of the Public Health Law and, as such, is subject to extensive state regulation pursuant to Article 28 of said law and title 10 of the Official Compilation of Codes, Rules, Regulations of the State of New York. Additionally, a nursing home receiving medicaid funds must keep and make available to the appropriate State agency records regarding patient care and payments, pursuant to 42 U.S.C., § 1396a (subd. 27). It is for these and similar reasons that a nursing home, albeit family-run cannot rely on *Slutsky*.' "

In other words, the nursing homes involved here have already sought, with respect to the very same records sought by the grand jury in the matter at bar, a decision from the Supreme Court, Suffolk County, which court held that their record books and records do not enjoy Fifth Amendment protection.

■ Thus as defendant points out, if, as is the case here, a State court has already determined [1] that the owners of the nursing homes do not possess a Fifth Amendment privilege in the homes' books and records, there can be no basis for the plaintiffs' claim that § 190.40 of the New York Criminal Procedure Law leaves them in doubt with respect to their privilege. That State court decision as to the inapplicability of the privilege binds this Court under the principles of the doctrine of collateral estoppel.[2] Plaintiffs are estopped from further litigating an issue that is critical to their claim, and as a result their claim falls. See *Lombard v. Board of Education,* 502 F.2d 631, 636–37 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); *Brown v. DeLayo,* 498 F.2d 1173 (10th Cir. 1974); *Tang v. Appellate Division of the New York Supreme Court, First Department,* 487 F.2d 138, 141–43 (2d Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *Taylor v. New York City Transit Authority,* 433 F.2d 665 (2d Cir. 1970); *Montagna v. O'Hagan,* 402 F.Supp. 178 (E.D.N.Y.1975); *Olson v. Board of Education,* 250 F.Supp. 1000, 1004 n. 8 (E.D.N.Y.), *app. dism'd,* 367 F.2d 565 (2d Cir. 1966). Under these authorities, this rule applies even though the Federal action is brought, as is the case at bar, under 42 U.S.C. § 1983.

The issue is critical because plaintiff claims that the vice in Section 190.40 is that, unlike the federal immunity statutes involved in *Brown v. Walker,* 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed.2d 819 (1896), and *United States v. Monia,* 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376 (1943), which grant

---

**1.** Apparently, no appeal was taken from this decision.

**2.** Although the partnership as a whole was the party to the State court action, and the individual partners are the plaintiffs here, no one denies that the privity between the parties is such that the State court result is binding here. See, *e. g., Acree v. AirLine Pilots Association,* 390 F.2d 199 (5th Cir.), *cert. denied,* 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968); *Jefferson School of Social Science v. Subversive Activities Control Board,* 118 U.S.App.D.C. 2, 331 F.2d 76 (1963); *Nichols v. Alker,* 126 F.Supp. 679 (E.D.N.Y.1954), *aff'd,* 231 F.2d 68 (2d Cir.), *cert. denied,* 352 U.S. 829, 77 S.Ct. 42, 1 L.Ed.2d 51 (1956); 1B *Moore's Federal Practice* ¶ 0.411[6], [12].

"sufficiently coextensive protection to supplant one's right to be free from self-incrimination", the New York statute leaves a witness in doubt as to whether protection exists where there is a question whether "the witness does not possess a privilege against self-incrimination with respect to the production of such evidence." The latter question, however, and hence also the vice, have been removed in their case by Mr. Justice McInerney's decision. The effect thereof is to provide that the Section "as applied" to these books and records no longer contains any such vice or uncertainty and thus falls squarely within the decisions of the Supreme Court in *Brown v. Walker, supra,* and *United States v. Monia, supra,* in which similar statutes were sustained as constitutional.

Because plaintiffs are estopped from litigating this critical issue, their claim is necessarily defeated.

## II

■ Because in this particular case the nursing homes, in which the plaintiffs are partners, have available to them and have availed themselves of a State court "fully competent to adjudicate [their] constitutional claims" (see *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975)), it would appear that in any event this Court should abstain from hearing their claims under the principles enunciated in the *Salem Inn, Inc.* case and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

It is true that plaintiffs maintain that there is "no criminal proceeding" now pending in New York State, but they cite only *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), in support of this proposition. Neither of these cases, however, is precisely on point, because the question presented here is whether a criminal proceeding is pending when a grand jury has been impanelled and has issued a subpoena duces tecum addressed to one of the partners seeking to quash the same. No such question was discussed in the cited cases.

The United States Supreme Court has held in *United States v. Monia,* 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376 (1943), that "[a]n investigation by a grand jury is a criminal case" within the meaning of such words as used in the Fifth Amendment. In addition, the New York State Criminal Procedure Law, § 1.20(18), defines a criminal proceeding as one "which * * (b) occurs in a criminal court and is related to a prospective, pending or completed criminal action, * * * or involves a criminal investigation." A "criminal court" is defined under said Law, § 10.10, to include the County Court in Nassau County in which the grand jury in this case was impanelled, and under said Law, § 190.05, the grand jury "constitut[es] a part of said court * * *."

■ In other words, when a grand jury has been impanelled and is sitting and investigating, there is a "criminal case" and in New York a criminal proceeding, and most significantly there is the State court responsible for and having jurisdiction of such grand jury from which relief from constitutional abuses may be obtained. Interference with such state criminal proceedings would appear clearly to be within the prohibitions contemplated by *Younger* and its progeny.

From these authorities, and especially in view of the particular facts of this case, it seems clear that there is and has been "an ongoing state criminal proceeding" within the meaning of *Younger v. Harris* and *Doran v. Salem Inn, Inc.,* and hence this Court must, under the principles of federalism and comity, abstain.

## III

Finally, even if this Court were not to abstain, plaintiffs have not shown irreparable injury of the magnitude required to justify the issuance of a federal injunction against the enforcement of a state criminal statute or the continuation of an ongoing criminal proceeding. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d

482 (1975); *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971); *Beal v. Missouri Pacific Railroad,* 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926). As the Supreme Court said with respect to this issue in *Younger v. Harris* (401 U.S. at pp. 46, 47, 91 S.Ct. at pp. 751, 752):

> "In all of these cases the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' *Fenner, supra.* Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. See, e. g., *Ex parte Young, supra,* 209 U.S. 123 at 145–147, 28 S.Ct. 441 at 447–449, 52 L.Ed. 714. Thus, in the *Buck* [*Watson v. Buck*] case, *supra,* 313 U.S. [313], at 400, 61 S.Ct. [962], at 966 [85 L.Ed. 1416], we stressed:
>
> > "Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional. 'No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid.' *Beal v. Missouri Pacific Railroad Corp.,* 312 U.S. 45, 49, 61 S.Ct. 418, 420, 85 L.Ed. 577."

"And similarly, in *Douglas,* [*Douglas v. City of Jeannette*] *supra,* we made clear, after reaffirming this rule, that:

> "It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith * * *." 319 U.S. [157] at 164, 63 S.Ct. [877], at 881 [87 L.Ed. 1324]."

In the case at bar plaintiff's claim is in essence that he will be irreparably injured if he must await indictment, arrest and possible jail before he is given an opportunity to litigate further whether or not production of the books and records in question here actually conferred immunity upon him. As indicated, however, such allegations are insufficient to warrant interference by a federal court with state criminal prosecutions. See also *Brown v. Walker,* 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896).

Moreover, as the defendant points out, there is no certainty that the plaintiffs will ever be arrested, accused, indicted, jailed or otherwise, and at this juncture plaintiffs alleged injury is wholly conjectural and speculative.

## CONCLUSION

For all of the foregoing reasons plaintiffs' applications for the convention of a three-judge court[3] and for a preliminary injunction must be and the same hereby are denied in all respects.

SO ORDERED.

---

**3.** The Court is fully aware of the "constitutional insubstantiality" test defined in *Hagens v. Lavine, etc.,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), but feels in the light of all of the foregoing that plaintiffs' claims are wholly insubstantial.