OPINION OF THE COURT
Joseph P. Kuszynski, J.
The defendants in the Love Canal litigation, Hooker Chemicals & Plastics Corporation, Occidental Petroleum Corporation, the City of Niagara Falls, the County of Niagara and the Board of Education of the City of Niagara Falls, move pursuant to CPLR 3101 and 3120 to discover and copy documents in the possession and/or under the control of the New York State Department of Health *862 concerning the physical condition of the some 1,500 plaintiffs who have filed about 700 actions for injuries allegedly sustained due to exposure to toxic chemicals buried in the Love Canal area. The defendants seek information including but not limited to any health questionnaires completed by or on behalf of such plaintiffs, all hospital and medical records concerning these plaintiffs, any results of blood tests or other medical examinations administered to any of them and any other documents relevant to their present or past physical condition.
By way of background, the New York State Department of Health began an investigation of health complaints of residents living near the Love Canal in the spring of 1978. The study consisted of a medical questionnaire, and a later investigation of physician and hospital records to verify the questionnaire data. On August 2, 1978, the Department of Health declared a health emergency in what is now defined as the Love Canal area. Subsequently, further information was collected regarding the residents including physician, hospital, medical and psychiatric records, fetal death certificates and information related to the deaths, and birth certificates of newly born children. In August, 1978, the Department of Health also conducted blood testing of area residents who desired such testing. All of this information was gathered by the means of written consents from the residents containing promises of confidentiality and firm commitments to the residents that the confidentiality pledge would be kept.
Defendants maintain that by commencing litigation, the plaintiffs, as “patients” waived any rights of confidentiality to the records in the possession of the State. In this regard they cite Koump v Smith (25 NY2d 287, 294) for the proposition that “by bringing or defending a personal injury action in which mental or physical condition is affirmatively put in issue, a party waives the [physician/patient] privilege.”
The State, on the other hand, in opposing this motion relies upon the confidentiality provision of section 206 (subd 1, par [j]) of the Public Health Law.
*863 This court can find no legal justification for defendants’ contention that by commencing litigation, plaintiffs have somehow waived their right to confidentiality of the studies completed by the State and the information obtained by the State regarding the health hazards in the Love Canal area. The State’s posture is logical, that the Legislature created a privilege of privacy for State-conducted health emergency studies with two important public policies in mind: (1) protection of the privacy of the State’s citizens, and (2) the creation of an atmosphere of trust,- to enable the Health Department to gather and compile complete health data it needs to carry out its statutory purpose.
The reasoning of Yaron v Yaron (83 Misc 2d 276, 283-284) dealing with the social worker-client, psychologist-client, and physician (psychiatrist)-patient privileges applies particularly to the present matter: “Privilege granted by the Legislature was not meant to be a myth. It was meant to cure the evil which had resulted from social workers either voluntarily or by court direction being forced to disclose communications given to them of the most intimate nature by people desperately in need of help * * * How can such persons have faith in this process if they become aware that some court can subsequently find that the confidence in which such feelings were revealed can be betrayed? This court takes the position that any communication which is privileged when made remains privileged forever unless the privilege is waived by the client.”
The sought-after records in possession of the State, therefore, are not to be released to the defendants by the Department of Health.
The defendants are correct, however, in their reliance upon Koump v Smith (supra). The fact that outside records were used by the State Health Department in completing their health study does not automatically preclude those records from discovery. The defendants can serve notice for the production of medical records or examination upon the plaintiffs pursuant to CPLR 3121. Plaintiffs must then move for a protective order pursuant to CPLR 3122. “The burden of proving that the party’s mental or physical condition is in controversy, of course, is on the party *864 seeking the examination or hospital records.” (Koump v Smith, supra, p 300.)
There is no legal impediment to the defendants seeking plaintiffs’ physicians’ and hospital records, medical and psychiatric records, fetal death certificates and related medical information or birth certificates pursuant to CPLR 3121 even if such documents were used in the State studies, as long as the materials are not sought directly from the State.
The defendants under no circumstances are entitled to the responses to questionnaires used by the Department of Health and referred to in the affidavit of David Axelrod, dated December 30,1981, nor to the discussion or results of the committee which investigated the Love Canal situation. Nor are the defendants entitled to the results of the blood tests obtained under the auspices of the State Health Department with accompanying promises of confidentiality.