In the Matter of ECUMENICAL TASK FORCE OF THE NIAGARA FRONTIER, INC., et al., Appellants, v LOVE CANAL AREA REVITALIZATION AGENCY et al., Respondents.

Fourth Department, April 24, 1992

APPEARANCES OF COUNSEL

*Allen, Lippes & Shonn (Richard Lippes* of counsel), for appellants.

*Robert Paul Merino, Jr.,* for respondents.

**OPINION OF THE COURT**

CALLAHAN, J. P.

This is another episode* in the ongoing saga of Love Canal and citizens concerned for environmental quality. We are well aware of the problems generated from the chemical contamination found at the Love Canal Emergency Declaration Area (EDA) in Niagara Falls and of the mass evacuation of its residents. The houses in the EDA were purchased by the Love Canal Area Revitalization Agency (LCARA) with the intent to resell them when the area was revitalized and made environmentally safe. LCARA has been the lead agency involved in attempting to redevelop and to resettle the area. In 1985, LCARA issued a negative declaration and attempted to sell six houses. The Attorney-General obtained an injunction *(Abrams v Love Canal Area Revitalization Agency,* 132 Misc 2d 232, *affd* 134 AD2d 885). The court also directed LCARA to conduct a health study and to comply with the New York State Environmental Quality Review Act (SEQRA) (ECL 8-0101 *et seq.)* before selling any houses. LCARA has now adopted its Findings Statement and Master Plan ending the SEQRA review process. Petitioners feel that more has to be done.

Petitioners, each a not-for-profit corporation, commenced this CPLR article 78 proceeding seeking to obtain a procedural and substantive review of the Environmental Impact Statement (EIS) filed by LCARA, as well as an order declaring the Findings Statement and Master Plan adopted by it to be null and void and enjoining LCARA from selling homes in Niagara Falls and Wheatfield until they have fully complied with SEQRA. Supreme Court dismissed that petition upon the grounds that petitioners lacked standing to commence such a

---

* Litigation involving Love Canal has been ongoing for more than a decade. Several of those matters have come before this court for review *(see, Matter of Love Canal Actions,* 161 AD2d 1169 [discovery dispute about disclosure of expert reports], *modfg* 145 Misc 2d 1076; *Abrams v Love Canal Area Revitalization Agency,* 134 AD2d 885 [Attorney-General has standing to protect public interest by enforcing SEQRA provisions], *affg* 132 Misc 2d 232; *Matter of Love Canal,* 92 AD2d 416 [discovery dispute concerning State Department of Health documents], *affg* 112 Misc 2d 861).

proceeding and that, in any event, they were not entitled to equitable relief because they were guilty of laches.

■ We disagree with Supreme Court's conclusion that petitioners lacked standing to bring this proceeding. Petitioners' interests are within the "zone of interest" protected by SEQRA, and it is apparent that LCARA's proposed redevelopment and resettlement of the EDA may have a harmful effect on their members *(see, Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 433; Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9; Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 5)*. Furthermore, in our view, it is desirable that environmental disputes be resolved on their merits rather than by preclusive, restrictive standing rules *(cf., Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 413)*.

■ We also conclude that Supreme Court erred in invoking the equitable doctrine of laches. CPLR 217 sets forth a four-month Statute of Limitations for commencing an article 78 proceeding against a governmental body or officer. Because laches is a purely equitable defense, it will not serve to bar recovery in an action at law commenced within the limitations period *(Brown v Lockwood, 76 AD2d 721, 729)*. As such, unless the legal right is barred by the Statute of Limitations, the equitable remedy is not barred by the doctrine of laches *(see, Galway v Metropolitan El. Ry. Co., 128 NY 132, 147; Bohemian Brethren Presbyt. Church v Greek Archdiocesan Cathedral of Holy Trinity, 94 Misc 2d 841, 845-846, affd 70 AD2d 538)*. Thus, the time to bring a CPLR article 78 proceeding to challenge compliance with SEQRA is within four months after the decision-making process is complete and the administrative determination is final and binding (CPLR 7801 [1]; *Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 203). Indeed, until the final SEQRA determination has been made, there can be no legal challenge *(see, Matter of Greenpoint Renaissance Enter. Corp. v City of New York,* 137 AD2d 597, 601, *lv denied* 72 NY2d 810).

On December 6, 1989, LCARA published its Draft Generic Environmental Impact Statement (DGEIS), filed its Notice of Completion and also filed its Notice of Public Hearing scheduling a public hearing for January 4, 1990, with the comment period ending on January 22, 1990. Upon its review of comments received, and preparation of responses thereto, LCARA approved its Final Generic Environmental Impact Statement (FGEIS) on May 30, 1990. On June 14, 1990, LCARA pub-

lished its Findings Statement, typically the last step in the SEQRA review process, even though the State Disaster Preparedness Commission had not yet approved the proposed alternative commercial uses for those neighborhoods the State Department of Health (DOH) had found not suitable for residential use. On August 15, 1990, LCARA offered 10 houses in the EDA for sale and, on September 10, 1990, the lower court, after hearing the arguments of petitioners as *amici curiae,* lifted the previously imposed injunction *(see, Abrams v Love Canal Area Revitalization Agency, supra)* without addressing the SEQRA review issue, thereby allowing LCARA to proceed with resettlement of the EDA. Thus, this proceeding, commenced on October 11, 1990, is within the four-month limitations period running from the publication of the Findings Statement on June 14, 1990. Furthermore, given the multifaceted nature of the litigation over the years on a matter of significant importance, respondents cannot show any prejudice.

■ We find no merit to respondents' contention, raised for the first time on appeal, that petitioners' claims should be dismissed upon the grounds of res judicata or collateral estoppel. Petitioners were not parties to the *Abrams* litigation *(see, Abrams v Love Canal Area Revitalization Agency, supra).* They were granted *amicus curiae* status in that litigation in lieu of intervenor status. Moreover, the court, apparently deferring to consent given by the Attorney-General for resettlement of the EDA, lifted the injunction without examining the quality of respondents' SEQRA review. Thus, petitioners were compelled to commence this proceeding to obtain judicial consideration of respondents' SEQRA review.

On the merits, petitioners argue that because LCARA violated the statutory scheme of SEQRA by failing to comply with its procedural and substantive requirements, an injunction should be entered to prevent LCARA's moving forward with the EDA resettlement until compliance is achieved or, in the alternative, that this matter should be remanded for a full determination on the merits. Because the full SEQRA record is before this court, in the interests of judicial economy, we address the merits of petitioners' arguments in order that these issues may be resolved.

Petitioners specifically maintain that LCARA violated the procedural requirements of SEQRA by (1) failing to properly notify other involved agencies that it intended to act as lead agency; (2) preparing generic, rather than site-specific, envi-

ronmental impact statements, thereby omitting many essential details; (3) improperly delegating the issue of adverse health effects to the DOH and the issue of remediation of uninhabitable neighborhoods to the State Department of Environmental Conservation (DEC), without discussing these issues in its DGEIS; (4) improperly segmenting the environmental issues in such a way that the Environmental Impact Statements simply did not include consideration of certain issues; and (5) failing to provide the public and interested agencies with a reasonable amount of time to comment on the DGEIS and the FGEIS, as well as discouraging the public from commenting on the FGEIS. Respondents disagree.

At the core of the controversy are the roles of an involved agency and the lead agency, defined in 6 NYCRR 617.2 (t) and (v). Whereas there may be a number of involved agencies, the lead agency is established at the earliest possible time, in order to oversee a thorough but expedited review of the environmental effects of the proposed project (6 NYCRR 617.6 [b] [1]). Here, LCARA was established as the lead agency by the Legislature to resolve problems within the EDA and to effect its redevelopment and resettlement. Although its authority was somewhat circumscribed because the State Disaster Preparedness Commission (an involved agency) was given the power to oversee any spending by LCARA in excess of $25,000 as well as the obligation to approve LCARA's Master Plan, LCARA was clearly the agency best suited to be named lead agency. Its designation was consistent with the related criteria set forth in 6 NYCRR 617.6 (e) (5) for designating a lead agency for actions involving more than one agency. Indeed, this question was effectively resolved when Supreme Court directed LCARA to complete the SEQRA review of its proposed plan for the redevelopment and resettlement of the EDA (see, Abrams v Love Canal Area Revitalization Agency, supra, at 235, affd 134 AD2d 885, 886).

■ Our examination of the DGEIS, FGEIS and Findings Statement reveals that LCARA considered in detail the ways in which the Master Plan would affect the local communities within the EDA (namely, the City of Niagara Falls and the Town of Wheatfield) as well as various State and local governmental and nongovernmental agencies. The concerns expressed by the Attorney-General in January 1990 about the need for supplemental site-specific details were apparently resolved when he no longer saw any need for the injunction. In any event, LCARA indicated in its Findings Statement that

it intended to work with the pertinent national, State and local agencies on further site-specific proposals that may be needed to complete the Master Plan. Thus, we conclude that LCARA has conducted the appropriate review *(see,* 6 NYCRR 617.15) and has allowed room for flexibility in the implementation of the Master Plan in order that the environment may sustain the least harm.

■ Although a lead agency may not delegate consideration of an issue relevant to the preparation of an EIS to another agency in such a way that it abandons its role as ultimate decisionmaker on matters of environmental significance, the lead agency is encouraged to consult those agencies that are more expert in a particular area *(see,* ECL 8-0109 [3]; 6 NYCRR 617.3 [i]; 617.4 [c]; *Matter of Coca-Cola Bottling Co. v Board of Estimate,* 72 NY2d 674, 682). Notably, LCARA coordinated its SEQRA review with the DEC, the DOH and the Federal Environmental Protection Agency (EPA) in order to have the proper information from which, as lead agency, it could reach its own conclusions about the environmental effects of the EDA plan. We find no evidence that LCARA abrogated its responsibilities. In fact, LCARA's consultative approach was both realistic and sensible and did not contravene the procedural requirements of SEQRA.

■ LCARA was charged under SEQRA with the responsibility of investigating the potential environmental impacts of the project in the EIS, as well as its long-term and short-term effects (ECL 8-0109 [2]; *Matter of Village of Westbury v Department of Transp.,* 75 NY2d 62, 68-71; *Onondaga Landfill Sys. v Flacke,* 81 AD2d 1022, 1023). As lead agency it may choose, however, "in its discretion, not to examine the cumulative impact of separate applications within the same geographic area" *(Matter of Save the Pine Bush v City of Albany, supra,* at 205; 6 NYCRR 617.15 [a] [1]). A review of the Master Plan discloses that LCARA analyzed the separate effects of the project to arrive at an over-all plan that would be least offensive to the environment. Those findings, set forth in the DGEIS and FGEIS, particularly in LCARA's responses to comments, reflect a balanced, thorough SEQRA review of the entire redevelopment/resettlement plan.

It is well established that SEQRA requires that the lead agency make the DEIS and FEIS available with sufficient lead time to afford those interested ample opportunity to study the project, the environmental effects of the proposed project and then to comment thereon (ECL 8-0109 [4]; 6 NYCRR 617.8 [c];

617.9 [a]; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 415-416; *Matter of Shawangunk Mountain Envtl. Assn. v Planning Bd.,* 157 AD2d 273, 276). Apart from an allegedly isolated comment by LCARA's Planning Director to the effect that comments on the FGEIS would be superfluous, we find sufficient lead time was afforded to all interested parties.

We now focus our review of the record on claims that respondents failed to comply with the substantive requirements of SEQRA. Specifically, petitioners contend that LCARA violated the substantive requirements of SEQRA by failing to thoroughly investigate the effects of the project on (1) areas off-site, (2) historically or architecturally significant structures, (3) areas that may become part of the project as it develops further, (4) area wildlife, (5) area plant life, (6) area transportation, and (7) area wetlands; and that LCARA failed (8) to discuss adequately the indirect and cumulative environmental impacts of the project and (9) to consider a reasonable range of alternatives to residential rehabilitation and commercial development. Respondents disagree.

To ascertain whether there has been compliance with the substantive requirements of SEQRA, we must determine whether LCARA, as lead agency, explored the effects of the proposed project on the environment and made a "reasoned elaboration" of its findings *(Akpan v Koch,* 75 NY2d 561, 570; *Matter of Jackson v New York State Urban Dev. Corp., supra,* at 415-416). In making this evaluation, we must keep in mind that, because of the number of separate parts of the over-all project being undertaken, LCARA elected to prepare a generic EIS (6 NYCRR 617.15 [a] [1], [4]). The regulations permit generic EIS's to be based on conceptual information and to discuss in general terms various hypothetical scenarios that may occur (6 NYCRR 617.15 [d]). Particularly noteworthy is the fact that, although a lead agency must set forth in the generic EIS specific criteria under which future aspects of the project will be undertaken (6 NYCRR 617.15 [b]), "[g]eneric EIS's may be broader, and more general[,] than site or project specific EIS's and should discuss the logic and rationale for the choices advanced" (6 NYCRR 617.15 [d]).

A thorough review of the DGEIS, FGEIS, Master Plan and the Findings Statement discloses that LCARA, as the properly designated lead agency, took the requisite "hard look" at the possible and probable environmental effects of the proposed project, adequately and reasonably addressed the prevailing

concerns, and kept future development in mind *(see, Akpan v Koch, supra,* at 570; *Matter of Jackson v New York State Urban Dev. Corp., supra,* at 415-416). We therefore conclude that LCARA acted neither arbitrarily nor capriciously *(Matter of Schodack Concerned Citizens v Town Bd.,* 148 AD2d 130, 134-135, *lv denied* 75 NY2d 701; *Horn v International Business Machs. Corp.,* 110 AD2d 87, 93-100, *lv denied* 67 NY2d 602) and that there was satisfactory compliance with SEQRA. The DEC will review the project at the permitting stage, at which time petitioners would be free to mount further challenges *(see, Residents of Bergen Believe in Envt. & Democracy v County of Monroe,* 159 AD2d 81, 85, *lv denied* 77 NY2d 803).

Accordingly, the judgment should be affirmed.

GREEN, BALIO, LAWTON and FALLON, JJ., concur.

Judgment unanimously affirmed, without costs.