The LAW FIRM OF DANIEL P. FOSTER, P.C., Plaintiff,

v.

Raymond DEARIE, in his Administrative capacity as United States Attorney for the Eastern District of New York; Lee Laster, in his Administrative capacity as Director of the New York Field Division of the Federal Bureau of Investigation; Benjamin Ward, in his Administrative capacity as Commissioner of the New York Police Department; Robert Morgenthau, in his Administrative capacity as District Attorney of the County of New York; and John Does 1–20, Defendants.

No. 85 C 2316.

United States District Court, E.D. New York.

July 17, 1985.

The Law Firm of Daniel P. Foster, P.C., New York City (Daniel P. Foster, Kit De-

cious, New York City, of counsel), for plaintiff.

Robert M. Morgenthau, Dist. Atty., New York County, New York City (John W. Moscow, Mark Dwyer, Asst. Dist. Attys. and John J. Malcolm, New York City, of counsel) for state defendants.

Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y. (Robert Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for federal defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, a law firm, brought this action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 alleging a conspiracy between state and federal officials to deprive it of its civil rights. Plaintiff now moves by order to show cause for a preliminary injunction.

The complaint alleges the following. In February 1984 agents of the Federal Bureau of Investigation, New York Police Department (NYPD), and United States Attorney started an investigation of plaintiff in bad faith and for purposes of harassment, without reasonable expectation of obtaining a valid conviction. The agents, pursuant to an unlawfully obtained warrant, conducted an unlawful search of plaintiff's offices and seizure of its property (February search). By November 1984 agents of the District Attorney (DA) and NYPD began a criminal prosecution of two of plaintiff's clients in order to continue the bad faith harassment of the law firm. On May 30, 1985 the DA issued a grand jury subpoena *duces tecum* (subpoena) to plaintiff to produce numerous documents and records, many concerning Mia J. Prior, before a state grand jury.

Plaintiff seeks a declaration that defendants have acted unconstitutionally and an injunction enjoining them from (a) using any materials seized in, or fruits of, the February search against it or its clients, (b) pursuing any investigation based upon those materials, (c) issuing civil or criminal process to obtain material from plaintiff

without first permitting it to adjudicate its rights, (d) pursuing any acts against plaintiff until the federal defendants comply with all previous court orders and (e) engaging in any acts declared unconstitutional. Plaintiff seeks a preliminary injunction granting the identical relief.

This is not plaintiff's first action before this court. Plaintiff recently moved for an order directing the return of the property seized in the February search and ruling that the material would not be admissible as evidence at any hearing or trial. *See* Fed.R.Crim.P. 41(e). On the government's representation that it would return all the property, the court declined to exercise jurisdiction stating that plaintiff would reserve all rights to "make a suppression motion in any district court where a trial is pending." *Ex Parte Decious*, No. 85 C 1654, slip op. at 3–4 (E.D.N.Y. June 7, 1985). Familiarity with that order is assumed. Plaintiff's application for a stay pending appeal was denied by Judge Sifton on June 10, 1985, the same date on which plaintiff filed a notice of appeal. The Court of Appeals for the Second Circuit also denied the stay pending appeal but granted plaintiff's application for an expedited appeal, which is pending.

The history of this action is roughly as follows. After being served with the subpoena, plaintiff moved to quash in Supreme Court, New York County. On about June 7, 1985, Justice Berkman conducted a sealed hearing pursuant to N.Y.Crim. Proc.Law § 190.50(7), after which she denied the motion and directed plaintiff to comply. It is unclear whether she modified the subpoena before ordering compliance. She denied an application to stay her order. Judge Sandler of the Appellate Division granted an interim stay which a unanimous panel of the Appellate Division subsequently denied on about June 21, 1985. The appeal to the Supreme Court, Appellate Division, is still pending.

Plaintiff then sought relief in the District Court for the Eastern District of New York. Plaintiff appeared before Judge Sifton on June 21, 1985 seeking an order

temporarily restraining defendants from executing any process or seeking to enforce any order against it. That motion was denied, as was a motion for a stay pending appeal. A hearing on the motion for a preliminary injunction was set for June 26, 1985 before this court, provided that plaintiff file a complaint on June 24 showing federal jurisdiction. On June 25 plaintiff again appeared before Judge Sifton seeking a temporary restraining order which Judge Sifton treated as an application for reconsideration and denied. Plaintiff immediately filed a notice of appeal from that order. This court heard oral argument on the motion for a preliminary injunction on June 26, 1985.

To prevail in a motion for a preliminary injunction plaintiff must establish (1) irreparable harm and (2) either (a) probable success on the merits or (b) sufficiently serious ground for litigation and a balance of hardships tipping decidedly in its favor. *See, e.g., Jackson Diary, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). The court need not consider the first requirement since plaintiff fails to satisfy the second.

The immediate harm plaintiff alleges is that complying with the subpoena severely impairs its ability to function as a law firm. This allegation and many others in plaintiff's papers, and the fact that plaintiff started this action as soon as it became apparent that the state court would neither quash the subpoena nor grant a stay pending appeal, indicate that this action is essentially a collateral attack in federal court on the subpoena issued in connection with a state grand jury investigation.

Plaintiff contends that the February search was unconstitutional. Daniel P. Foster, President of plaintiff, is of the belief that the state grand jury investigation is "directly derivative" of that search. Thus, were the court to grant the relief sought, the immediate and direct effect would be to enjoin the state court from enforcing its order to comply with the subpoena and the state from pursuing a grand jury investigation, which is a criminal proceeding. *See United States v. Monia*, 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376 (1943); *Notey v. Hynes*, 418 F.Supp. 1320, 1326 (E.D.N.Y.1976).

▮ The court has the power to enjoin state criminal proceedings pursuant to section 1983 of Title 42. *See Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Nonetheless, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the many cases which follow it hold that principles of equity, comity and federalism require federal courts generally to abstain from interfering with such proceedings. This doctrine plainly applies to actions in which plaintiffs ask federal courts to enjoin the use of materials, and information derived from those materials, in state criminal proceedings on the ground that they were unconstitutionally obtained. *See Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975) (when plaintiff claimed that state indictment was fruit of unconstitutionally coerced testimony before a grand jury, federal court should not have intervened either to enjoin the criminal prosecution or give declaratory relief as to the admissibility of the testimony); *Perez v. Ledesma*, 401 U.S. 82, 84, 91 S.Ct. 674, 676, 27 L.Ed.2d 701 (1971) (the admissibility of evidence in state criminal prosecutions should ordinarily be resolved by state tribunals) (citing *Stefanelli v. Minard*, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951)). Indeed, in *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), a case pre-dating the *Younger* case and upon which plaintiff relies, the Supreme Court stated that it "is difficult to think of a case in which an accused could properly bring a state prosecution to a halt while a federal court decides his claim that certain evidence is rendered inadmissible by the Fourteenth Amendment." *Id.* at 485 n. 3, 85 S.Ct. at 1120 n. 3.

▮ The court may intervene, however, where a plaintiff shows that the harm threatened is not merely irreparable but also "great and immediate." *Younger*, 401 U.S. at 46, 91 S.Ct. at 751. This might be

shown by proving "harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction." *Perez*, 401 U.S. at 85, 91 S.Ct. at 676. While not directly addressing the issue of abstention, plaintiff apparently contends that this action fits within this exception to the *Younger* doctrine.

■ The complaint alleges that state and federal defendants are acting jointly for purposes of harassing plaintiff, in bad faith and without reasonable hope of obtaining valid convictions. Although plaintiff complains of a "pattern" of harassment by defendants, the only events cited to illustrate this pattern are the February search and its aftermath and the state investigation commenced by November of 1984. Even if plaintiff were the subject of several searches and investigations, such circumstances, standing alone, do not necessitate a finding of bad faith or harassment. *Cf. Hicks v. Miranda*, 422 U.S. 332, 351, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975) (where "each step in the pattern of seizures" was authorized by judicial warrant or order, finding of bad faith harassment not necessitated, even if courts were in error on issues of law). In any event, the record is devoid of any evidence to support plaintiff's belief that the February search and the state investigation are connected in any way.

To contradict plaintiff's allegations of a pattern of harassment, Assistant DA Dwyer has represented to the court that the DA's office is not familiar with the relationship between plaintiff and the United States Attorney and that it had nothing to do with the February search. The affidavit submitted by Assistant DA Moscow, which details the history of the state investigation, supports these representations.

That affidavit states the following. On July 26, 1984 Mia J. Prior left a group with which she had previously been associated. On July 31, 1984, Daniel P. Foster learned that a check for $7,700 had been sent to Prior's bank account. Harold Jones and Mark Orrisch went to the bank with a check made out to Jones for $7,700 and a

letter of authorization, both ostensibly signed by Prior. They received the money after a bank officer called Prior's number, which was that of plaintiff, and spoke with a woman falsely identified as Prior who authorized the transaction.

When Prior learned of the transaction, the affidavit continues, she claimed that her name had been forged. This was later confirmed by handwriting analysis. The film of the transaction at the bank shows Orrisch and Jones at the teller's window. In September of 1984 they were arrested and charged with grand larceny and criminal possession of a forged instrument. Kit Decious and Amanda Reid, members of plaintiff, represented them. In November 1984 the two attorneys told Assistant DA Soybel that Orrisch and Jones were messengers of plaintiff and that the firm had a right to withdraw money from Prior's account based upon a power of attorney which they displayed. Soybel subpoenaed and finally obtained that power of attorney. On May 20, 1985 Soybel received a handwriting report from the Police Department Laboratory which certified that the power of attorney presented to him as genuine by Decious and Reid, and notarized and witnessed by Decious, had been forged.

Upon an application by Assistant DA Moscow, on June 24, 1985 Judge Altman of the New York Supreme Court disqualified Decious and Reid from representing Orrisch and Jones partly because the attorneys and plaintiff were targets of an ongoing grand jury investigation. Moscow says that the grand jury is investigating crimes committed after July 1, 1984, including the two that Orrisch and Jones are charged with as well as forgery, scheme to defraud, conspiracy to commit those crimes, and possibly charges based upon producing a forged power of attorney as evidence in a criminal proceeding.

Based upon the affidavit of Assistant DA Moscow, and upon the fact that plaintiff has submitted nothing but conclusory allegations in its behalf, the court concludes that plaintiff has not established, and is not

likely to establish, that the state investigation has any connection with the February search, that it is part of a pattern of harassment or that it was undertaken in bad faith without a legitimate hope of obtaining valid convictions.

Plaintiff also alleges that the procedures afforded in the state courts are inadequate to challenge the subpoena. Plaintiff says that it raised its constitutional claims in the motion to quash, but that the judge found it was an inappropriate time to adjudicate those issues. The state system provides an appellate structure in which plaintiff may challenge this ruling, which in fact it is doing. That plaintiff has been unable to obtain a stay pending appeal and is dissatisfied with the decisions of the state courts is, of course, no reason for this court to intervene. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 610, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (where plaintiff has appellate remedies available in state court, truncating exhaustion requirement is not permitted just because he "believes that his chances of success on appeal are not auspicious"). Moreover, even if plaintiff could not properly raise his constitutional claims in the procedure it invoked, and even if the state court had rejected those claims at an interlocutory stage, the court would not be justified in intervening absent a showing of bad faith harassment.

The court finds that injunctive relief would interfere with a pending state criminal proceeding, that plaintiff has not shown the bad faith harassment necessary to warrant such interference, and that plaintiff is unlikely to be able to make such a showing. Since there is not a likelihood of eventual success on the merits, and important public interests would be thwarted were the court to grant a preliminary injunction, the motion is denied. This decision is consonant with the spirit of *Ex Parte Decious, supra,* in which the court deemed it more appropriate for the court where a proceeding is pending to determine the constitutionality of a search and seizure and the admissibility of any information derived from that search and seizure. So ordered.