MINNEAPOLIS URBAN LEAGUE, INC., Plaintiff,

v.

The CITY OF MINNEAPOLIS, a municipal corporation, The Minneapolis Police Department, Police Chief Anthony V. Bouza, Police Sgt. David Niebur, Police Sgt. Frank Dallman, Robert Afton, Minneapolis City Attorney, individually and in their capacity as members of the Minneapolis Police Department and the City Attorney's office, respectively, Defendants.

Civ. No. 4–86–640.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 18, 1986.

David Rivera, St. Paul, Minn., for plaintiff.

Steven R. Frederickson, Asst. City Atty., Minneapolis, Minn., for defendants.

Patricia A. Hirl, Minneapolis, Minn., for Minneapolis Star & Tribune Co.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Minneapolis Urban League, Inc., brought this action for damages and injunctive relief against the City of Minneapolis, and several of its officials—Police Chief Anthony Bouza, Police Sergeants David Niebur and Frank Kallman, and City Attorney Robert Afton. Plaintiff alleges that defendants unlawfully obtained and executed a search warrant of Urban League premises and that they have taken other actions to damage plaintiff's reputation. The matter is now before this court on plaintiff's motion for a temporary restraining order (TRO) requiring defendants to return the seized materials and any copies made and to deposit any notes or other documents prepared as a result of the search. The requested TRO would also enjoin defendants from taking any further action relating to the seizure of plaintiff's property, conducting further searches or seizures of plaintiff's property, conducting any further investigation of plaintiff, proceeding with any prosecution based on the seized information, and publishing, communicating, releasing or disseminating any information regarding plaintiff's business affairs.[1]

*Background*

Minneapolis police obtained and executed a search warrant on plaintiff's premises on August 5, 1986. A former employee had complained that plaintiff had used corporate funds to pay for President Ronald Edwards' successful defense against criminal charges (possession of an unregistered

---

1. The Minneapolis Star and Tribune Company has filed a motion to intervene for the limited purpose of opposing plaintiff's action insofar as it seeks to limit the dissemination of information about this controversy. This motion is not now before the court, but counsel was able to state the newspaper's position at today's hearing.

firearm). Defendant Niebur apparently initiated an investigation of the complaint.[2] He spoke to two Urban League funders, who stated that the League was not authorized to use their funds for such a purpose, and to a current Urban League employee, who stated that records indicated that plaintiff had issued checks to Edwards' attorney. Niebur's application for the search warrant states that he did not know whether all or part of the money used was public, but that the expenditures constituted theft because they were made without city, United Way, or Urban League board approval.

*Discussion*

■ In determining whether temporary injunctive relief is appropriate the court must consider four factors: (1) the probability of success on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between this harm and any injury that the temporary relief would inflict upon other parties; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109 (8th Cir.1981). A TRO is an extraordinary remedy, and the plaintiff has the burden of demonstrating that it is entitled to such relief.

*1. Likelihood of Success on the Merits*

Plaintiff asserts that defendants have violated its fourth amendment right to be free from unreasonable searches and seizures and its due process rights. On the record now before the court, plaintiff has failed to demonstrate that it is likely to prevail on either of these claims.

Plaintiff asserts that the search warrant was invalid because Niebur made the application in bad faith and withheld vital information from the Hennepin County judge who issued it. Specifically, plaintiff asserts that Niebur sought to retaliate for previous complaints about him and efforts on the Scott case. Plaintiff states that Niebur failed to inform the judge that Ed-

wards and the Urban League had initiated the Justice Department investigation, that a former employee who initiated the instant investigation had been fired, and that a current employee who confirmed that Edwards' legal fees had been paid also stated that the board was aware of the payments and was preparing to review them with auditors. Plaintiff also argues that the affidavit in support of the warrant was insufficiently specific about the identity and reliability of the employees, their means of access to information, the dates of the alleged transactions, and other details. Plaintiff also asserts that the search warrant was overbroad. Defendants have submitted an affidavit of defendant Niebur, who asserts that he acted in good faith and without knowledge that the Justice Department had reopened its investigation into Scott's death.

■ A search and seizure is not violative of the fourth amendment if conducted pursuant to a valid search warrant, issued upon a showing of probable cause. In considering whether there was probable cause to issue a warrant, the court must consider the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "The affidavit need only show facts sufficient to support a finding of probable cause. Therefore, the omission of other facts would not be misrepresentations unless they cast doubt on the existence of probable cause." *United States v. Dennis,* 625 F.2d 782, 791 (8th Cir.1980). Plaintiff has not focused its probable cause argument on the nature of the alleged offense, but rather on the sources and extent of Sergeant Niebur's information. On this record, plaintiff has not shown that it is likely to prevail.

■ Plaintiff argues that it has been deprived of its property right in its papers and records and in its right to conduct the

---

**2.** Defendant Niebur and plaintiff's President Ronald A. Edwards, have been at odds on a number of occasions over the last 20 years. Most recently, Edwards and the Urban League urged the United States Department of Justice to investigate the involvement of the Minneapolis Police Department Decoy Unit, then under Niebur's command, in the death of Sal Saran Scott, a black man. The Department of Justice began this investigation in 1984, closed it in early 1985, and reopened it on July 22, 1986.

business of its corporation without governmental interference. It also asserts damage to its reputation in the community. If the search warrant was valid, its proper execution could not have violated plaintiff's property interests without due process;[3] the judicial proceeding authorizing the warrant would be sufficient process. Plaintiff's interest in its reputation is not, in and of itself, sufficient to invoke due process protections. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

█ Defendants conducted this search pursuant to a facially valid warrant, issued by a state court judge. Principles of federalism urge that federal courts avoid interfering with state criminal proceedings, absent "special circumstances." *Younger v. Harris,* 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971), *see also Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Law Firm of Daniel P. Foster,* 613 F.Supp. 278 (E.D.N.Y.1985). Plaintiff asserts that such special circumstances exist, that Niebur's bad faith indicates that the warrant's only purpose was harassment. *See, e.g., Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), *Black Jack Distributors, Inc. v. Beame,* 433 F.Supp. 1297 (S.D.N.Y.1977). On the current record, the court cannot find that plaintiff will succeed on this claim.[4]

### 2. *Irreparable Harm*

█ Plaintiff urges that defendants' activities have injured its reputation, thus threatening its ability to obtain the funding it needs to survive. It is this threat to funding which constitutes the alleged irreparable harm. It acknowledges that it has not lost any funding because of this incident. The Minneapolis Urban League is a well-respected institution with many years of service to this community. The media

coverage thus far has stressed the existence of two sides to the story. Plaintiff has its damage action as protection if it is able to make out a constitutional claim. Under the circumstances, plaintiff has failed to demonstrate irreparable harm.

### 3. *Balance of Harms and Public Interests*

Neither the balance of the harms nor the public interest weigh in favor of granting the TRO on the present record.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that plaintiff's motion for a temporary restraining order is denied.

---

3. Defendants apparently executed the warrant by requesting Urban League employees to retrieve the requested documents from the files. They assert that they did not go through any other materials.

4. At the hearing, plaintiff suggested that it also needed certain of the seized documents to continue its own auditing process and to respond to media questions concerning its activities. It may be that plaintiff will want to seek copies of the documents at some future time.