Larry K. NICK, Damon Andrews & Co., Ltd., Energy Assets Associates 85–1, Energy Assets Associates 85–2, Energy Assets Associates 86–2, Westville Associates, L.P., Randi Gardens Associates, 3920 Market Street Associates, York Village Associates, Eagle Run Associates, Columbia Gardens Limited Partnership, Bowling Arms Associates, MCS Associates Limited Partnership, York Associates, Pennwold Associates, Ajax Energy Partners, Ajax Petroleum Terminals, Inc., Ajax Energy, Inc., Best Petroleum, Inc., Ajax Hudson Petroleum, Inc., Ajax Hackensack Petroleum, Ajax Albany Terminal, Inc., Ajax Island Petroleum, Inc., Ajax Hudson Terminal, Inc., and Ajax Energy Trucking Co., Ltd., Plaintiffs,

v.

Robert ABRAMS, Attorney General of the State of New York, John Wappett, Ernest J. Peck and other Employees in the Attorney General's Office Whose Names are not known to Plaintiff at this time, Defendants.

No. 89 Civ. 4844 (RWS).

United States District Court, S.D. New York.

July 26, 1989.

Snow, Becker, Krauss, P.C., New York City, for plaintiffs; Ronald J. Katter, Leslie Trager, of counsel.

Robert Abrams, Atty. Gen. State of N.Y., New York City, for defendants; Edward D. Saslaw, John P.M. Wappett, Asst. Attys. Gen., of counsel.

OPINION

SWEET, District Judge.

Plaintiffs Larry K. Nick ("Nick") and various partnerships and corporations for which Nick serves as general partner or president (collectively, the "Plaintiffs") have applied for a preliminary injunction directing defendant Robert Abrams, the Attorney General of the State of New York ("Abrams"), and defendants John Wappett ("Wappett"), Ernest J. Peck ("Peck"), and other employees of the Attorney General's office (collectively, the "Defendants") to return materials the Defendants seized pursuant to a search warrant during a criminal investigation. For the reasons set forth below, the application for a preliminary injunction is denied at this time.

### The Parties

Nick, a New York resident, is a certified public accountant who does business at 880 Third Avenue, Fourteenth Floor, New York, New York. Nick serves as general partner or president of numerous partnerships and corporations named as plaintiffs in this action. Those entities also maintain offices at 880 Third Avenue, Fourteenth Floor, New York, New York.

Abrams is the Attorney General for New York State. Wappett is an Assistant Attorney General assigned to the Criminal Prosecutions Bureau, and Peck is an employee in the Attorney General's office. The complaint also identifies as defendants various unnamed employees of the Attorney General's office.

### The Facts

On September 1, 1988, New York State's Commissioner of Taxation and Finance (the "Commissioner") asked the Attorney General's office to investigate alleged criminal activity concerning the collection and payment of New York State taxes. As part of this investigation, Wappett drafted several search warrant applications that he submitted to the Honorable Lawrence E. Kahn, Justice of the New York State Supreme Court, County of Albany ("Justice Kahn"), on June 19, 1989.

On June 21, 1989, Justice Kahn signed eight search warrants, including one for 225 West Thirty–Fourth Street, Suite 1107, New York, New York (the "Thirty–Fourth Street Search Warrant"). On June 23, 1989, Wappett learned that the Thirty–Fourth Street Search Warrant's subjects recently had moved to 880 Third Avenue, Third Floor, New York, New York. On June 26, 1989, Wappett applied in writing for Justice Kahn to amend this warrant, which he did (the "Latsinik Search Warrant").

The Latsinik Search Warrant reads in pertinent part:

YOU ARE HEREBY DIRECTED TO SEARCH: The premises known as 880 Third Avenue, Third Floor, City of New York, County of New York, State of New York, the offices of Alexander Latsinik, Alex L. Fuel Co., Inc., Hudson Petrole-

um, Inc., and any other business entity involving Alexander Latsinik, including any rooms, closets, file cabinets, safes, desks or other areas of said offices.

Latsinik was a founding limited partner in Ajax Energy Partners, which Nick served as general partner.

On June 27, 1989, several investigators for the Attorney General's office, including Peck, arrived at 880 Third Avenue to execute the Latsinik Search Warrant (the "June 27 Search"). Upon learning that the businesses at issue had moved from the third floor to the fourteenth floor, Wappett telephoned Justice Kahn to amend the Latsinik Search Warrant. Justice Kahn approved the amendment at 7:05 a.m. on June 27, 1989.

While the investigators were on the fourteenth floor, Nick identified four cartons of materials that Latsinik was storing there, and the investigators seized those documents. Although the Latsinik Search Warrant did not cover Nick, the investigators allegedly searched Nick's files, making notes and photocopying various documents. When they left, the investigators took the Latsinik documents, their notes, and their photocopies.

On June 28, 1989, Wappett obtained from Justice Kahn another search warrant for 880 Third Avenue, Fourteenth Floor, New York, New York (the "Nick Search Warrant"). That warrant provided in pertinent part:

YOU ARE HEREBY DIRECTED TO SEARCH: The premises known as 880 Third Avenue, Fourteenth Floor, City of New York, County of New York, State of New York, the offices of Philip Silverglate, Larry K. Nick, Xavier Monaco, Ajax Energy, Inc., and any other business entity involving the above-named individuals and any subsidiary of the above-named businesses including, but not limited to: Ajax Heating Oil, Inc., Best Petroleum, Inc., Ajax Hudson Petroleum, Inc., Ajax Hackensack Petroleum, Petro–Chemical Trading, Ltd., Ajax Albany Terminal, Ajax Island Petroleum, Ajax Hudson Terminal, Inc., and Ajax Energy

Trucking Co., Ltd., including any rooms, closets, file cabinets, safes, desks or other areas of said offices.

According to Wappett, he based the application for the Nick Search Warrant upon a cursory review of documents obtained from the locations subject to the seven other search warrants obtained with the Thirty–Fourth Street Search Warrant and upon information Nick's controller, Frank Caputi ("Caputi"), allegedly volunteered to Peck during the June 27 Search. Nick contends that the Attorney General's office obtained the additional names on the Nick Search Warrant from information that was "undoubtedly learned during the[ ] illegal search two days earlier [the June 27 Search]." Nick Aff. ¶ 4.

On June 29, 1989, investigators from the Attorney General's office executed the Nick Search Warrant (the "June 29 Search"), seizing numerous documents, as well as computers, software, and floppy and hard disks.

Nick contends that the June 29 Search was more extensive than the Nick Search Warrant permitted. For example, Nick alleges that the investigators seized a file concerning a refinancing of property owned by Westville Associates ("Westville"), although that file contained no reference to any of the entities listed in the Nick Search Warrant. According to Nick, he cannot complete the Westville refinancing until the Attorney General's office returns this file.

Nick also asserts that the Attorney General's office seized the files of other entities not listed in the Nick Search Warrant, including Energy Assets Associates, 1515 Hillside Associates, Randi Gardens Associates, Damon Andrews & Co. Ltd., 3920 Market Street Associates, York Village Associates, Eagle Run Associates, Columbia Gardens Limited Partnership, Bowling Arms Associates, M.C.S. Associates Limited Partnership, York Associates, and Pennwold Associates. Nick is the general partner for each of these entities.

On July 13, 1989, Wappett submitted the returns and inventories regarding the Nick Search Warrant to Justice Kahn, who sealed them under New York law.

According to Wappett, the Attorney General's office is in the process of reviewing the seized materials so it can release any documents not pertinent to its investigation.

Nick and several other of the Plaintiffs are parties in two unrelated actions now pending in federal court, *Fisher v. Horizon Equities*, 89 Civ. 1546 (S.D.N.Y.) (KMW), and *Richter v. Nick*, 89 Civ. 9089 (S.D. N.Y.) (MBC). According to Nick, he requires documents currently held by the Attorney General's office to respond to discovery requests in *Fisher* and to prepare an answer in *Richter*.

### Prior Proceedings

On July 14, 1989, the Plaintiffs sued under 42 U.S.C. § 1983. The complaint alleges that the Defendants violated the Fourth Amendment because they seized materials beyond the Nick Search Warrant's scope and because the Nick Search Warrant was "overly broad, unsubstantiated and obtained on the basis of a prior illegal search and seizure." Complaint ¶ 27.

Also on July 14, 1989, the Plaintiffs moved by Order to Show Cause for a preliminary injunction directing the Defendants to return the materials seized pursuant to the Nick Search Warrant.

### Standard for a Preliminary Injunction

To obtain a preliminary injunction, an applicant must make a "showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the party requesting the preliminary relief." *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir.1989) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)), *petition for cert. filed*, June 19, 1989.

### Younger Abstention

In *Younger v. Harris*, the Supreme Court ruled that a federal court should abstain from interfering with a pending

state criminal prosecution, absent exceptional circumstances creating a threat of irreparable injury " 'both great and immediate.' " 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). The Supreme Court founded this policy of restraint upon principles of equity, comity, and federalism. *See Kugler v. Helfant*, 421 U.S. 117, 123, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975).

According to the Second Circuit, courts applying *Younger* abstention " 'must determine (1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding.' " *University Club v. City of New York*, 842 F.2d 37, 40 (2d Cir.1988) (quoting *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir.), *cert. denied*, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987)). Applying each of these elements, abstention is appropriate here, and a preliminary injunction will not issue.

### 1. Ongoing State Proceeding

This case requires an inquiry into whether a "pending state proceeding" exists when a state attorney general executes a search warrant authorized by a judge during a criminal investigation prior to arrest or indictment. For the reasons set forth below, these circumstances constitute a pending state proceeding for *Younger* abstention purposes.

First, the challenged search warrant meets New York's definition of a "criminal proceeding." New York law defines a "criminal proceeding" as "any proceeding which (a) constitutes a part of a criminal action or (b) occurs in a criminal court and is related to a prospective, pending or completed criminal action, ... or involves a criminal investigation." N.Y.Crim. Proc.Law § 1.20(18) (McKinney 1981). A criminal action "commences with the filing of an accusatory instrument against a defendant in a criminal court...." *Id.* at § 1.20(16). Because no indictment has been issued, section 1.20(18)(a) does not apply. However, the search warrant challenged here falls within section 1.20(18)(b). It "occur[red] in a criminal court"—Justice Kahn of the New State Supreme Court issued the search warrant—and it "involve[d] a criminal investigation."

Second, other courts have invoked *Younger* abstention to reject challenges to prosecutors' actions during criminal investigations. For example, in *Kaylor v. Fields*, the Eighth Circuit held that a federal court should decline to hear a constitutional challenge to subpoenas issued pursuant to a prosecutor's subpoena power. 661 F.2d 1177, 1182 (8th Cir.1981). Similarly, courts have abstained from hearing actions disputing the validity of grand jury subpoenas. *See, e.g., Law Firm of Daniel P. Foster, P.C. v. Dearie*, 613 F.Supp. 278, 280 (E.D. N.Y.1985); *Notey v. Hynes*, 418 F.Supp. 1320, 1326 (E.D.N.Y.1976).

Finally, common sense dictates that a criminal investigation is an integral part of a criminal proceeding. Without subpoenas, grand jury investigations, and searches pursuant to search warrants, prosecutors seldom could amass the evidence necessary to commence criminal actions. Permitting the targets of state criminal investigations to challenge subpoenas or search warrants in federal court prior to their indictment or arrest, therefore, would do as much damage to principles of equity, comity, and federalism as allowing federal courts to suppress the fruits of subpoenas or search warrants in ongoing state criminal trials. *Cf. Barr v. Abrams*, 641 F.Supp. 547, 554 (S.D.N.Y.1986) (Leval, J.) ("Federal courts cannot permit the civil rights action to be used as a combative defense against a state criminal prosecutor's conduct of an investigation."), *aff'd*, 810 F.2d 358 (1987).

### 2. Important State Interest

New York's interest in supervising search warrants issued during criminal investigations constitutes an important state interest for *Younger* abstention purposes. The Supreme Court repeatedly has held that federal courts should abstain from hearing challenges to searches and seizures related to pending state criminal proceedings. *See, e.g., Kugler v. Helfant*, 421 U.S.

117, 130, 95 S.Ct. 1524, 1533, 44 L.Ed.2d 15 (1975) ("at least in the absence of 'extraordinary circumstances' federal courts must refuse to intervene in state criminal proceedings to suppress the use of evidence claimed to have been obtained through unlawful means"); *Stefanelli v. Minard*, 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951) ("federal courts should refuse to intervene in State criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure"); *Perez v. Ledesma*, 401 U.S. 82, 84–85, 91 S.Ct. 674, 676–77, 27 L.Ed.2d 701 (1971) ("the propriety of arrests and the admissibility of evidence in state criminal prosecutions are ordinarily matters to be resolved by state tribunals").

### 3. Opportunity for Judicial Review

The Plaintiffs have an adequate opportunity to challenge the Nick Search Warrant in state proceedings. As soon as an indictment issues, the Plaintiffs can challenge the Nick Search Warrant's validity. *See* N.Y.Crim.Proc.Law §§ 710.10(1), 710.20(1) (McKinney 1981).

The fact that the investigation may continue for some period before an indictment issues does not deprive the Plaintiffs of an opportunity for judicial review. As the Supreme Court has noted, "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution alone do not constitute 'irreparable injury' in the 'special legal sense of that term' " *Kugler*, 421 U.S. at 124, 95 S.Ct. at 1530 (quoting *Younger* 401 U.S. at 46, 91 S.Ct. at 751). If the Plaintiffs believe the Attorney General's office's pre-indictment investigation is unduly prolonged, they remain free to challenge the prosecutors' conduct in an Article 78 proceeding. The Second Circuit has recognized that an Article 78 proceeding offers parties "a due process hearing at a meaningful time and in a meaningful manner." *Campo v. New York City Employees' Retirement Sys.*, 843 F.2d 96 (2d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988).

Moreover, Wappett stated in his affidavit that the Attorney General's office current-

ly is reviewing the seized materials to identify and release items not pertinent to the investigation. In light of these assurances, it is unnecessary for a federal court to intervene in the ongoing state criminal proceeding. *See Ex parte Decious*, 622 F.Supp. 40 (E.D.N.Y.), *appeal dismissed,* 779 F.2d 35 (1985).

### Conclusion

Because the Plaintiffs have failed to meet their burden of establishing irreparable harm in light of *Younger* and *University Club*, their application for a preliminary injunction is denied.

It is so ordered.