**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

JANAE KINGSTON, d/b/a Movie Buffs,

    Plaintiff-Appellant,

v.

UTAH COUNTY; CARLYLE K.
BRYSON, Utah County Attorney; and
DAVID BATEMAN, Utah County Sheriff,

    Defendants-Appellees.

No. 97-4000
(D. Utah)
(D.Ct. No. 96-CV-937)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA, BRORBY**, and **EBEL**, Circuit Judges.

_____

    Ms. Kingston appeals the district court's denial of her motion for a

preliminary injunction restraining officials of Utah County, Utah, from initiating

any criminal proceedings based on allegedly improperly seized evidence.[1] We

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Ms. Kingston's complaint incorporated a number of different claims. Only her request for injunctive relief against criminal prosecution is addressed in this order.

exercise jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1). We vacate the district court's order and remand for further proceedings consistent with this opinion.

After receiving a citizen's complaint on October 9, 1996, the County Attorney of Utah County, Utah, Carlyle Bryson, initiated an investigation of two "Movie Buffs" video rental stores for renting pornographic[2] videos. Mr. Bryson directed police officers to go to the stores and rent videos that might violate Utah's pornography law. On October 17, 1996, an officer visited the stores, perused the videos in the "Adults Only" sections, and rented a video from each location. A member, or members, of the Utah County Attorney's office viewed the videos and requested additional videos for evaluation. In response to that request, an officer rented two more videos from one of the locations on October 20, 1996.

After watching all four videos, an investigator in the County Attorney's office decided they violated the state's pornography law. The officers who visited the stores told the County Attorney that many of the videos in the "Adults

---

[2] The State of Utah terms illegally obscene material "pornographic." *See* Utah Code Ann. § 76-10-1203.

Only" sections of the stores also appeared to be pornographic. On October 25, 1996, a police officer requested a search warrant from a Utah County Magistrate Judge. The officer presented the judge with an affidavit which set forth, in some detail, the sexually explicit activities found in the four videos, along with an observation that other videos in the "Adults Only" sections of the two stores appeared to contain similar material. The magistrate found probable cause of a violation of Utah law and issued a warrant.

The warrant directed the police officers to search for the following, in addition to certain rental information:

> Evidence of the distribution of or a conspiracy to distribute videos and/or movies in violation of Section 76-10-1204[3] including but not limited to:
>
>> a. one copy only of each movie/video upon which there are markings such a "M", "XXX", "Adult Viewing Only", "Adults Only", "Must be 18 years or older to view this Video" or any combination of this or similar language conveying the same information;
>>
>> b. one copy only of any movie/video which does not bear a movie rating as granted by the Academy of Motion Picture Sciences of Hollywood.

This search was limited to the "Adults Only" rooms, the return drop boxes, and

---

[3] This section is entitled "Distributing pornographic material." The section does not define or describe the term "pornographic."

the counter areas of the two locations.

Officers executed the search warrant at both locations on October 25, 1996. They seized more than 800 videos and at least 135 empty video boxes.[4] Some videos in the "Adults Only" sections were not seized, and approximately 150 seized videos were returned after it was determined that they should not have been taken. Decisions by the officers varied as to what videos at the two locations should be seized pursuant to the warrant. As a result, a number of videos were seized at one location but not at the other.

On November 5, 1996, Ms. Kingston, the owner of "Movie Buffs," filed a Complaint for Declaratory and Injunctive Relief and for Damages for Violation of Civil Rights in the district court alleging a violation of her First, Fourth, and Fourteenth Amendment rights and, in part, requesting an injunction against filing criminal charges against her based on the seized material.[5] She named as

---

[4] The number of items seized is unclear. At one point in its order, the district court provides contradictory numbers, and those numbers differ from the ones cited by appellant.

[5] The complaint's third cause of action states "[t]he Defendants should be preliminarily and permanently restrained from filing criminal charges against the Plaintiff based on any of the material unlawfully and [sic] seized in Defendants' general and unconstitutional search."

defendants, Utah County, Mr. Bryson, David Bateman, the Utah County Sheriff, and ten unidentified members of the Utah County government.[6] The district court held a hearing on the preliminary injunction on November 27, 1996. Following the hearing, the district court denied Ms. Kingston's motion in an order issued on December 6, 1997. Ms. Kingston appeals that decision. Following the district court's decision, state criminal charges (Distributing Pornographic Material, Dealing in Harmful Material to a Minor, and Racketeering) were filed against Ms. Kingston, among others.

At the outset, we must address the question of whether the district court should have invoked the *Younger* doctrine and declined to hear this case. *See Younger v. Harris*, 401 U.S. 37 (1971). Under our system of federalism, it is essential that states be allowed to try state cases free from interference by federal courts. *See id.* at 43. Therefore, a party may obtain federal injunctive relief against state criminal prosecutions only in certain narrow circumstances. *Id.* at 53. This case presents a significant problem under this doctrine because if we send this case back to the district court, that court will be faced with enjoining a well-developed state criminal prosecution (extremely close to trial if not already

---

[6] In this order and judgment, we will refer to this group collectively as "the defendants."

-5-

beyond trial).

The defendants raised abstention (presumably invocation of the *Younger* doctrine) as an affirmative defense in their answer to Ms. Kingston's complaint. In a brief to the district court, they cited to *Younger* and argued for its application. Furthermore, during the hearing, they strenuously argued for application of the *Younger* doctrine. The district court, however, did not address *Younger* in its order denying Ms. Kingston's motion for an injunctive relief.

Unfortunately, the defendants did not address the *Younger* doctrine in their brief to this court. Defendant's counsel, however, did raise *Younger* during oral argument. Ordinarily, an issue inadequately briefed will not be considered even if asserted during oral argument. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995) (citing Fed. R. App. P. 38). This general rule does not apply here, however, because courts may address application of the *Younger* doctrine *sua sponte*. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976); *Morrow v. Winslow*, 94 F.3d 1386, 1390-91 (10th Cir. 1996) (raising *Younger* doctrine *sua sponte* and determining abstention required), *cert. denied*, 117 S. Ct. 1311 (1997). Furthermore, this Circuit has expressly rejected the argument that states must raise the *Younger* doctrine to preserve its applicability. *See Morrow*,

94 F.3d at 1391 n.3. Because of the difficulties that would arise if we reversed this case on the merits (now that criminal proceeding are well advanced), we believe *sua sponte* consideration of *Younger* is required.

Although, for the reasons above, the defendants did not waive application of *Younger* simply by failing to raise it in their brief, we must also determine if they waived it in some other manner. Because abstention is not jurisdictional, it may be waived by a state. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626 (1986) ("A State may of course voluntarily submit to federal jurisdiction even though it might have had a tenable claim for abstention."); *ACORN v. Municipality of Golden,* 744 F.2d 739, 743 n.2 (10th Cir. 1984). However, the only instances of waiver this court has been able to find have been express (*i.e.* the state "urged [the court] to proceed to an adjudication of the constitutional merits").[7] *Ohio Civil Rights Comm'n*, 477 U.S. at 626 (listing cases); *Morrow*, 94 F.3d at 1390. We cannot equate the defendants'

---

[7] In *ACORN*, this Circuit declined to invoke the *Younger* doctrine because the city voluntarily stayed criminal proceedings against one of the plaintiffs. *ACORN*, 744 F.2d at 743 n.2. In that case, the state defendants also never raised *Younger* before the district court or this court. *Id.* In this case, the defendants apparently agreed to temporarily delay filing criminal charges only at the request of the district court. Furthermore, the defendants raised or attempted to raise *Younger* before both the district court and this court, and they moved forward with criminal proceedings as soon as possible, rather than waiting for final resolution in this court.

actions in this case to such an express waiver, especially when considered in light of the defendants' statements made during oral argument and before the district court.[8] Therefore, we must decide whether abstention pursuant to the *Younger* doctrine is appropriate in this case.

The Supreme Court based the *Younger* doctrine "on notions of comity and federalism, which require that federal courts respect state functions and the independent operation of state legal systems." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). In practice, federal courts invoke the doctrine when three conditions are met: (1) there are ongoing state proceedings; (2) the state proceedings offer an adequate forum to hear the plaintiff's federal claims; and (3) the state proceedings implicate important state interests. *See Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 1187 (1998). *Younger* abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances. *See Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir. 1989). We will address each of these conditions in turn.

---

[8] Obviously the failure to brief *Younger* itself cannot constitute an express waiver or courts would not be able to raise the doctrine *sua sponte*. We believe, however, in some cases, the failure to brief, in conjunction with other facts, might support a finding of an express waiver.

*Ongoing state proceeding*

Generally speaking, federal courts invoke the *Younger* doctrine when a state prosecution is pending at the time the federal proceeding is initiated. However, the doctrine also may apply even when the state prosecution begins after the federal complaint has been filed. "[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).

In this case, the defendants had begun an investigation and executed a search warrant to obtain the evidence they considered necessary to support criminal charges. Ms. Kingston then filed her federal complaint with the likely knowledge that criminal charges were imminent.[9] She requested a temporary restraining order from the district court to prevent the defendants from filing those criminal charges. Instead of deciding whether a temporary restraining order should issue, the district court requested (or ordered, depending on the version of

_____

[9] The day after she filed her complaint, Ms. Kingston filed a motion for a temporary restraining order to prevent the defendants from filing criminal charges. Attached to that motion was an affidavit of Ms. Kingston's counsel confirming he knew the filing of criminal charges was imminent.

the events) that the defendants hold off on filing charges until it could hold a hearing and decide whether an injunction would be appropriate. The defendants initiated criminal charges three days after the district court's decision.

We conclude these facts are sufficient to establish the existence of a pending state criminal proceeding. Although Ms. Kingston had not been charged, the allegedly illegal activity had already taken place, the investigation had been conducted, the search warrant had been executed, the necessary evidence had been obtained, and the charges would have been filed absent the district court's intercession. It was clear at the time this action was filed that Ms. Kingston would have had an immediate opportunity to challenge the validity of the warrant in state court. The Supreme Court has stated the *Younger* doctrine applies to "about-to-be-pending" state criminal proceedings. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 n.1 (1992). Other courts have invoked the *Younger* doctrine and have abstained from consideration of similar challenges to criminal investigations. *See Kaylor v. Fields*, 661 F.2d 1177, 1182 (8th Cir. 1981) (concluding issuance of prosecuting attorney's subpoena was pending state criminal proceeding); *Nick v. Abrams*, 717 F. Supp. 1053, 1056 (S.D.N.Y. 1989) (ruling execution of search warrant was pending state proceeding); *Law Firm of Daniel P. Foster, P.C. v. Dearie*, 613 F. Supp. 278, 280 (E.D.N.Y. 1985)

(deciding grand jury subpoena was pending state criminal proceeding). We agree with the statement of one of those courts, that

> [p]ermitting the targets of state criminal investigations to challenge subpoenas or search warrants in federal court prior to their indictment or arrest ... would do as much damage to principles of equity, comity, and federalism as allowing federal courts to suppress the fruits of subpoenas or search warrants in ongoing state criminal trials.

*Nick*, 717 F. Supp. at 1056.

In cases where *Younger* may be an issue, we believe district courts should grant or deny motions for a temporary restraining orders, instead of asking state defendants to voluntarily hold off action until a full hearing on injunctive relief can be held. Asking for voluntary delay puts state defendants in the awkward position of having to decide between proceeding as they are allowed under *Younger* or potentially angering the court. This tension creates situations, like this one, where the state defendants clearly would have proceeded with their criminal proceedings absent the district court's intervention.

### *Adequate forum*

An adequate forum exists to provide a review of Ms. Kingston's Fourth Amendment search and seizure challenge. State criminal charges have been filed and a trial is pending. There is no reason to suspect this proceeding will not

-11-

provide a full hearing concerning the validity of the search warrant.[10]  "[T]he admissibility of evidence in state criminal prosecutions [is] ordinarily [a] matter[] to be resolved by state tribunals."  *Perez v. Ledesma*, 401 U.S. 82, 84-85 (1971) (citing *Stefanelli v. Minard*, 342 U.S. 117 (1951)).

***Important state interest***

There can be no question that enforcement of a state obscenity statute is an important state interest for *Younger* doctrine purposes.  *See Hicks*, 422 U.S. at 334-35, 352 (invoking *Younger* doctrine in case involving prosecution under state obscenity statute).  Furthermore, "[i]t is difficult to imagine a more disruptive interference with the operation of the state criminal process short of an injunction against all state proceedings [than federal suppression of evidence.]" *Perez*, 401 U.S. at 84 (overruling lower court's order suppressing use of seized evidence in criminal obscenity case pursuant to *Younger* doctrine).

Because each of the three conditions for invoking the *Younger* doctrine are met in this case, the district court should have abstained.  Accordingly, we vacate the district court's decision and remand.

---

[10]  In addition, of course, Ms. Kingston also will have an opportunity on appeal to challenge the state court's resolution of her search warrant challenge, if necessary.

The *Younger* doctrine does not apply "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Perez*, 401 U.S. at 85; *see also Younger*, 401 U.S. at 54 (creating exception on "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief"); *Phelps*, 122 F.3d at 889. "[I]t is the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment." *Phelps*, 122 F.3d at 889 (quoting *Phelps v. Hamilton*, 59 F.3d 1058, 1066 (10th Cir. 1995)), On the record before us, there is no evidence any of these exceptions would apply to this case.

For these reasons, we **VACATE** the district court's order and **REMAND** for dismissal of Ms. Kingston's claim for injunctive relief.

Entered by the Court:

**WADE BRORBY**
United States Circuit Judge